John J. Kaiser, Esq. SBN 331036
Katelyn N. Sauve, Esq. SBN 356467
LINCOLN, GUSTAFSON & CERCOS LLP
101 W. Broadway San Diego CA 92101
Telephone: 619-233-1150
Facsimile: 619-233-6949
jkaiser@lgclawoffice.com
ksauve@lgclawoffice.com

Attorneys for Plaintiffs, Morning Crew Music and Gary Taylor

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MORNING CREW MUSIC, Inc. a California Corporation, and Gary Taylor an individual <br><br> Plaintiff(s), <br><br> vs. <br><br> UMG RECORDINGS, INC., a Delaware Corporation, UNIVERSAL MUSIC PUBLISHING, INC., a California Corporation, MECHANICAL LICENSING COLLECTIVE, a Delaware Non-profit Corporation and DOES 1 through 100 <br><br> Defendant(s). | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **1)    COPYRIGHT INFRINGEMENT – 17 U.S.C. § 101 et seq.** <br> **2)    DECLARATORY AND INJUNCTIVE RELIEF** <br> **3)    CONSTRUCTIVE TRUST** <br> **4)    ACCOUNTING** <br> **5)    CONTRACT REVISION OR MODIFICATION** <br> **6)    UNJUST ENRICHMENT** <br> **7)    BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** |

Plaintiffs Morning Crew Music and Gary Taylor (collectively, the "Plaintiffs"), by and through undersigned counsel, brings this Complaint for copyright infringement against Defendants UMG Recordings, Inc., Universal Music Publishing, Inc., Mechanical Licensing Collective and DOES 1 through 100, inclusive (collectively, the "Defendants") and alleges as follows:

///

///

### INTRODUCTION

1.      This instant action is for infringement of Plaintiff's federally registered copyright works (musical compositions or songs) pursuant to 17 U.S.C. § 501.

2.      MORNING CREW MUSIC is a company designed with the purpose of helping Gary Taylor publish, manage, distribute and otherwise monetize his artistic works which are in the forms of albums, songs and album artwork and derivative works thereof.

3.      On information and belief, DEFENDANT UMG RECORDINGS, INC. ("DEFENDANT UMG") is a Delaware corporation engaged in systematic and continuous business in the State of California that is involved in the infringement and/or benefits therefrom or continues to perpetuate the infringement, which also took place in Los Angeles, California in whole or in part. Over the past several years, Plaintiff has sent numerous communications to DEFENDANT UMG notifying them of such activity.  DEFENDANT UMG has continued to act in the same manner despite these notifications.  On information and belief, DEFENDANT UMG is the successor in interest to A&M Records, Inc. ("A&M"), and Capitol Records, LLC ("Capitol"), successor in interest to Virgin Records America, Inc. ("Virgin").

4.      On information and belief, DEFENDANT UNIVERSAL MUSIC PUBLISHING, INC. ("DEFENDANT UMP") is a California corporation engaged in systematic and continuous business in the State of California that is involved in the infringement and/or benefits therefrom or continues to perpetuate the infringement, which also took place in Los Angeles, California in whole or in part. Over the past several years, Plaintiff has sent numerous communications to DEFENDANT UMP notifying them of such activity.  DEFENDANT UMP has continued to act in the same manner despite these notifications.  On information and belief, DEFENDANT UMP is the successor in interest to A&M and Capitol, successor in interest to Virgin.

5.      On information and belief, DEFENDANT MECHANICAL LICENSING COLLECTIVE ("DEFENDANT MLC") is a Delaware non-profit corporation engaged in systematic and continuous business in the State of California that is involved in the infringement and/or benefits therefrom or continues to perpetuate the infringement, which also took place in Los Angeles, California in whole or in part. Over the past several years, Plaintiff has sent numerous communications to DEFENDANT MLC notifying them of such activity.  DEFENDANT MLC is a

1  nonprofit organization that collects and distributes royalties for music creators. DEFENDANT

2  MLC has continued to act in the same manner despite these notifications.

3  **PARTIES**

4  6.    Plaintiff, Morning Crew Music, is a corporation duly organized and existing under the

5  laws of the State of California. Plaintiff's principal place of business is located at 40053 Spring

6  Place Court, Temecula, CA 92591. Plaintiff is qualified to do business in the State of California.

7  7.    Plaintiff, Gary Taylor, is an individual who resides in the State of California and

8  solely owns Morning Crew Music.

9  8.    Upon information and belief, DEFENDANT UMG is engaged in music publishing.

10  DEFENDANT UMG is a corporation organized and existing under the laws of the State of

11  Delaware. DEFENDANT UMG's principal place of business is located in Santa Monica,

12  California.

13  9.    Upon information and belief, DEFENDANT UMP is engaged in music publishing.

14  DEFENDANT UMP is a corporation organized and existing under the laws of the State of

15  California. DEFENDANT UMP's principal place of business is located in Santa Monica,

16  California.

17  10.    Upon information and belief, DEFENDANT MLC is engaged in music publishing

18  and licensing. Defendant is a non-profit corporation organized and existing under the laws of the

19  State of Delaware.  DEFENDANT MLC is a nonprofit organization that collects and distributes

20  royalties for music creators. DEFENDANT MLC engages in business conduct in the state of

21  California.

22  **JURISDICTION AND VENUE**

23  11.    This is an action arising under the Copyright Act, 17 U.S.C. § 501.

24  12.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§

25  1331 and 1338 because it involves federal questions arising under the Copyright Act, as amended,

26  17 U.S.C. §§ 101 et seq.

27  13.    DEFENDANT UMG is subject to the personal jurisdiction of this Court because their

28  principal place of business is in Santa Monica, California and it is engaged in music publishing and

3<br>COMPLAINT

1   licensing activities in California, where it conducts business and distributes royalties to music

2   creators, thereby submitting itself to the laws and jurisdiction of this state.

3        14.     DEFENDANT UMP is subject to the personal jurisdiction of this Court because their

4   principal place of business is in Santa Monica, California and it is engaged in music publishing and

5   licensing activities in California, where it conducts business and distributes royalties to music

6   creators, thereby submitting itself to the laws and jurisdiction of this state.

7        15.     DEFENDANT MLC is subject to the jurisdiction of this Court because it is engaged

8   in music publishing and licensing activities in California, where it conducts business and

9   distributes royalties to music creators, thereby submitting itself to the laws and jurisdiction of this

10  state.

11       16.     Venue is proper under 28 U.S.C. §§ 1400(a) and 1391(c) in that, upon information

12  and belief, Defendants are residents of this District because they are business entities subject to

13  personal jurisdiction in this District.

14       17.     The terms "work," "works," and "all of the works" refer to copyrightable artistic

15  works created by Plaintiffs as described herein.   These include three albums (1) *GT,* (2)

16  *Compassion* (3) *Just Gets Better with Time,* 2 newly added songs (1) *My Heart Your Heart* and (2)

17  *Tease Me* (Remix, Featuring Gerald Albright) and a newly created album artwork as described

18  herein.

19                   **FACTS COMMON TO ALL CLAIMS**

20       18.     On or around April 15, 1983, Plaintiffs entered a Singles Deal with A&M Records

21  based on submitted demo songs which were paid for by Plaintiffs and originally created by Gary

22  Taylor.  The success of the Singles Deal led to an agreement to make a full album.  The album was

23  titled "GT" (1983) and consist of the following songs: 1) Down For The Count, 2) Just What I

24  Have In Mind, 3) Don't Fight It, 4) Without You In My Life, 5) On The Line, 6) Force Of Habit,

25  7) This Time, 8) Looking Back, 9) Special.  This series of agreements and actions were embodied

26  in a written contract dated April 15, 1983, and is attached hereto as Exhibit 1.   Paragraph 2(a) of

27  Exhibit 1 states that Mr. Taylor will provide two musical compositions that were "previously

28  recorded" by Mr. Taylor.  The agreement provides A&M Records with an option to have Mr.

1  Taylor record an additional song "Second Single" or an album. The option was exercised to create

2  an album which became the GT album.  At the signing of Exhibit 1 A&M Records already knew

3  of the existence of the songs which would make up the GT album and utilized this knowledge

4  when deciding to exercise their option. The phrase "previously unrecorded" was understood by the

5  parties to mean songs that have not been recorded and provided to other publishing groups or

6  otherwise released.  The deal was partly offered because A&M Records knew of the existence of at

7  least one albums worth of music and heard the music prior to signing the deal.  A&M Records

8  knew at the time of contracting that they were not hiring Plaintiffs to create music but merely

9  purchasing already created music.  Paragraph 4 of Exhibit 1 declares Mr. Taylor an employee and

10  the album is a work for hire effectively created by A&M Records despite already being created.

11  At no point was Mr. Taylor treated as an employee and the relationship did not equate to a work

12  for hire treatment.  Essentially A&M Records was placing the label work-for-hire on the

13  agreement despite the circumstances clearly not reflecting such an agreement.  Instead, A&M

14  Records was simply "hiring" Plaintiffs to purchase the rights to their intellectual property.  After a

15  series of business entity transactions, the benefits and obligations of A&M Records under Exhibit

16  1 were procured by DEFENDANT UMG and/or DEFENDANT UMP by way of their subsidiary

17  Universal Music Enterprises.  A&M Records fulfilled none of the roles typically filled by the

18  hiring entity in a work-for-hire agreement to musical compositions.

19       19.    On or around July 1, 1983, Plaintiffs entered into a publishing contractual agreement,

20  attached hereto as Exhibit 2, with Irving Music, Inc that split the ownership of the publishing

21  rights equally between Plaintiff MCM and Irving Music.  The deal was based on the songs

22  included in the "GT" album, as well as other songs submitted on the Plaintiffs Demo tape. The

23  agreement states if Irving (Company) fails to commercially exploit a specific composition within

24  two years after the agreement Plaintiffs are provided the right "to reacquire Company's interest

25  therein by notice to Company at any time thereafter."  The intent of this agreement was to provide

26  commercial exploitation for the benefit of all Parties, which did not occur.

27       20.    On or around September 9, 1987, Plaintiffs entered into a record deal with Virgin

28  Records America based on demo songs which were created prior by Plaintiff Gary Taylor

1   Pursuant to this agreement the album titled *Compassion* (1988) was released.  This agreement i

2   attached hereto as Exhibit 3.  Again, Virgin Records America already knew of the existence of th

3   songs which would make up the *Compassion* album and utilized this knowledge when deciding t

4   agree to Exhibit 3.  Virgin Records America knew at the time of contracting that they were no

5   hiring Plaintiffs to create music but were merely purchasing already created music.  Essentially

6   Virgin Records America was placing the label work-for-hire on the agreement despite th

7   circumstances clearly not reflecting such an agreement.  Virgin Records America was simply

8   "hiring" Plaintiffs to purchase the rights to their intellectual property.  Virgin Records Americ

9   fulfilled none of the roles typically filled by the hiring entity in a work-for-hire agreement t

10  musical compositions.

11  21.    Following a series of business transactions A&M Records, Almo/ Irving Music, and

12  Virgin Records America all ended up being under the ownership of DEFENDANT UMG and/or

13  DEFENDANT UMP. These transactions were completed sometime after 2002.  DEFENDANT

14  UMG and/or DEFENDANT UMP have recently confirmed their erroneous claim of ownership on

15  *Compassion*, *GT* and another album created by Plaintiff Gary Taylor, *Just Gets better with time*.

16  22.    On or around March 5, 2002, Plaintiffs secured a license for the *Compassion* album

17  from Virgin Records America.  This license agreement is attached as Exhibit 4.  This agreement

18  took place before Virgin came under the ownership of DEFENDANT UMG and/or DEFENDANT

19  UMP. Plaintiffs created a new album cover and two (2) new songs at their own expense.  Again,

20  these two new songs and new album artwork were not included on the original 1988 release of the

21  *Compassion* Album.  These new songs were (1) *My Heart Your Heart* and (2) *Tease Me* (Remix,

22  Featuring Gerald Albright).  DEFENDANT UMG/DEFENDANT UMP/Virgin later executed a

23  takedown from the internet of the Plaintiffs version of the *Compassion* album with the added songs

24  that DEFENDANT UMG/DEFENDANT UMP/Virgin had no claim to.

25  23.    In or around 2022 DEFENDANT UMG and/or DEFENDANT UMP rereleased the

26  Plaintiffs' version of the *Compassion* album, with the new artwork and added songs, as if it was

27  the 1988 original release.  This was done without any prior notice being provided to Plaintiffs.  As

28  such, no permission was granted to DEFENDANT UMG and/or DEFENDANT UMP for the use

1    of the Plaintiffs' redesigned album artwork or the two (2) new songs.  It is believed that

2    DEFENDANT UMG and/or DEFENDANT UMP rereleased this version earlier than 2022

3    throughout the world.  Plaintiffs have requested this information and DEFENDANT UMG and/or

4    DEFENDANT UMP has failed to produce it.  The newly created artwork created and published in

5    2002 is attached as Exhibit 8.  The original artwork created in or around 1988 is attached as

6    Exhibit 9.

7        24.     DEFENDANT UMG and/or DEFENDANT UMP released the *GT* album in the

8    Netherlands in 2011 and republished it worldwide in 2022. The purpose of these releases and

9    takedowns remains unclear, but they have generated minimal royalties compared to Plaintiffs'

10   other licensed music. Additionally, DEFENDANT UMG and/or DEFENDANT UMP has never

11   released or allowed monetization of a third album, *Just Gets Better with Time*. Due to

12   inconsistencies in record-keeping, payments, and communication, Plaintiffs have reason to believe

13   that any royalty payments received by DEFENDANT UMG and/or DEFENDANT UMP are being

14   distributed in amounts less than agreed upon in Exhibits 1-3.

15       25.     Sometime prior to April 30, 2024, Plaintiff notified the DEFENDANT MLC that they

16   had not been receiving royalty payments, and that the MLC's website inaccurately reflected that

17   DEFENDANT UMG and/or DEFENDANT UMP held a 100% ownership stake in the royalties.

18   Plaintiff understands that the DEFENDANT MLC communicated with DEFENDANT UMG

19   and/or DEFENDANT UMP, which claimed to have 100% ownership rights to the works in

20   question. When Plaintiff requested documentation supporting this assertion, DEFENDANT UMG

21   and/or DEFENDANT UMP refused to work with Plaintiff directly despite Plaintiff being the other

22   party of the agreement.  Instead Plaintiff had to work with DEFENDANT MLC to get the

23   requested documentation.  DEFENDANT MLC was provided two highly redacted copies of the

24   agreement.  Both versions are attached as Exhibit 6 and 7.  After multiple follow up attempts an

25   uncensored copy of the agreement was provided wherein it clearly established DEFENDANT

26   UMG and/or DEFENDANT UMP does not have 100% ownership stake.  In response, the

27   DEFENDANT MLC confirmed that it had frozen publishing payments due to the ongoing dispute

28   between DEFENDANT UMG and/or DEFENDANT UMP and Plaintiff.  However, the

DEFENDANT MLC later acknowledged in writing that it had mistakenly continued providing payments to DEFENDANT UMG and/or DEFENDANT UMP. Despite these payments, no corresponding royalty payments were made to Plaintiff from DEFENDANT UMG and/or DEFENDANT UMP. DEFENDANT UMG and/or DEFENDANT UMP has failed to provide any reasonable explanation for why they made two attempts at censoring the agreement and further delaying the process.

26.     On April 30, 2024, Plaintiff provided DEFENDANT UMG and/or DEFENDANT UMP with a preservation of records notice, by sending said notice to Andy Swan, VP, Contract Administration (Andy.Swan@umusic.com).    This notice was confirmed as received by DEFENDANT UMG and/or DEFENDANT UMP.

27.     The *GT* and *Compassion* albums, two newly added songs and the newly created album artwork are all original copyrightable work. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. and has received their copyright registration in the two albums, two new songs and the new album artwork with the Copyright Office in accordance with its rules and regulations. The copyright registrations are shown being owned by either Plaintiffs or Defendants which forms some of the contextual basis of this complaint.  All the copyright protected works that are subject to this complaint are validly registered with the U.S. Copyright Office.

28.     Defendant is providing access to the Work without permission and is improperly asserting authority under an invalid work-for-hire agreement. Additionally, Plaintiffs have provided proper notice to Defendants of Plaintiff's exercise of redemption rights for the *Compassion* and *GT* albums, pursuant to 17 U.S. Code § 203.

29.     On or around May 23, 2024, DEFENDANT UMG and/or DEFENDANT UMP responded that the termination notice is invalid as DEFENDANT UMG and/or DEFENDANT UMP believes the work-for-hire agreement is valid despite the facts previously described. Additionally, DEFENDANT UMG and/or DEFENDANT UMP continues to refuse to provide any clear accounting of royalty payments.  The accounting has always been presented in contradictory and incomplete methods.  Part of their internal accounting systems provides three separate accounts for unclear purposes.  There is a RGPH account which DEFENDANT UMG and/or

1  DEFENDANT UMP hasn't paid anything into that RGPH folder since the 90's according to an
2  admission by DEFENDANT UMG and/or DEFENDANT UMP in writing. RASW is reportedly
3  the writer's portion of the royalty. The writer, Gary Taylor is suppose to be receiving 100% of
4  these payments. DEFENDANT UMG and/or DEFENDANT UMP has made admissions in writing
5  that they are not providing 100% of these payments.  After issues were raised by Plaintiffs to
6  DEFENDANT UMG and/or DEFENDANT UMP, DEFENDANT UMG and/or DEFENDANT
7  UMP reportedly created a third account, RDOF, in fall of 2023. Additionally, inconsistencies
8  continue to appear. For example, payments will be shown going to the RGPH but in the body of
9  the statement it shows that it is making the payment to RASW account instead. These are only
10  some of the inconsistencies raised and we believe that during discovery additional causes of
11  actions may become relevant due to DEFENDANT UMG's and/or DEFENDANT UMP's
12  behavior with these internal accounts.

13      30.     By providing unauthorized access to the works, DEFENDANT UMG and/or
14  DEFENDANT UMP is engaging in copyright infringement. This unauthorized access is under the
15  guise of an invalid work for hire agreement. Additionally, for the two new songs and new album
16  artwork, unauthorized access is provided despite DEFENDANT UMG and/or DEFENDANT UMP
17  providing no legal argument or reason for such actions.

18      31.     Upon information and belief, DEFENDANT UMG and/or DEFENDANT UMP has
19  infringed and is infringing the copyright in the works identified by unlawfully reproducing and
20  distributing identical copies of the Work, in violation of the United States Copyright Act, 17
21  U.S.C. §§ 106 et seq. DEFENDANT UMG and/or DEFENDANT UMP has no right to continue
22  acting per any agreement and in consideration of the Redemption right notice. Additionally,
23  DEFENDANT UMG and/or DEFENDANT UMP has provided no basis for their infringement of
24  the two new songs (1) "My Heart Your Heart" and (2) "Tease Me" (Remix, Featuring Gerald
25  Albright) and the new album artwork created by Plaintiff sometime around 2002.

26      32.     The natural and probable foreseeable result of DEFENDANT UMG's and/or
27  DEFENDANT UMP's wrongful conduct has been to deprive Plaintiff of the benefits of selling
28  products embodying the albums, songs and artwork and licensing others to sell products

embodying these works, and to injure Plaintiff's relationship with present and prospective customers.   It is believed that DEFENDANT UMG and/or DEFENDANT UMP have also purposefully or negligently failed to properly monetize the albums under their control.   The revenue generated by music under DEFENDANT UMG's and/or DEFENDANT UMP's control is substantially underperforming in comparison to other works created by Plaintiff.

33.    DEFENDANT UMG's and/or DEFENDANT UMP's production, distribution, and sale of the infringing products and DEFENDANT UMG's and/or DEFENDANT UMP's wrongful conduct has also deprived and continues to deprive Plaintiff of the opportunity of expanding its good will.   DEFENDANT UMG and/or DEFENDANT UMP has no authority to continue to produce, distribute or sell Plaintiff's music but continues to do so.

34.    DEFENDANT UMG's and/or DEFENDANT UMP's infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiff's copyright, and in conscious disregard for Plaintiff's exclusive rights in the protected Work.

35.    DEFENDANT UMG's and/or DEFENDANT UMP's deliberate infringement of Plaintiff's copyright has greatly and irreparably damaged Plaintiff, and DEFENDANT UMG and/or DEFENDANT UMP will continue to damage Plaintiff greatly and irreparably unless enjoined by this Court. In the absence of injunctive relief, Plaintiff will have no adequate remedy at law. Accordingly, Plaintiff is entitled to a temporary and permanent injunction in accordance with 17 U.S.C. § 502.

36.    DEFENDANT UMG and/or DEFENDANT UMP has deliberately delayed resolving this issue over several years through various tactics, including providing censored copies of agreements and referring Plaintiff to over 10 different representatives, each contributing to the delay. This has caused Plaintiff significant mental anguish while attempting to recover and monetize their creative works, an effort that DEFENDANT UMG and/or DEFENDANT UMP has entirely failed to support.

## COUNT ONE

### Copyright Infringement – 17 U.S.C. § 101 et seq.

**(As against all Defendants; and Does 1 through 100, inclusive)**

37.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 33 as if fully set forth herein.

38.     All the works in question have valid copyrights and were all originally created by Plaintiff.  DEFENDANT UMG and/or DEFENDANT UMP has a defective argument to ownership of the following three albums (1) *GT*, (2) *Compassion*, and (3) *Just Gets better with time*.  Plaintiffs have already exercised their redemption rights to these albums under the proper procedures prescribed by the US Copyright Office but Defendants have continued to improperly assert that the work-for-hire agreement is valid and enforceable as a work-for-hire agreement, and Plaintiff has rights of redemption to these copyright protected works he created as the original author.  If the work-for-hire provisions were removed and based on the previous exercise of the redemption rights, the copyrights should immediately transfer back to the original author, Plaintiff Gary Taylor.  The termination notices are attached hereto as Exhibit 5.  Additionally, Defendants have no argument to the works (1) "My Heart Your Heart" and (2) "Tease Me" (Remix, Featuring Gerald Albright) or the new album artwork shown in Exhibit 8.  As previously described these songs and album work were independently created at or around 2002.  DEFENDANT UMG and/or DEFENDANT UMP then took control of this new artwork and songs and presented it as their own.

39.     All the artistic works in questions are registered with the Register of Copyrights pursuant to 17 US.C. § 411(a). A true and correct copy of the Certificates of Registration from the U.S. Copyright Office are attached as Exhibit 10 hereto.

40.     Plaintiff Gary Taylor is currently and at all relevant times has been the sole proprietor of all rights, title and interest in and to the copyrights of all the works.   Any claim by DEFENDANT UMG and/or DEFENDANT UMP to any right, title or interest in the works is based on an invalid work-for-hire agreement and subject to a valid termination notice, Exhibit 5.

41.     All of the works in question are wholly original works that are copyrightable subject matter under the laws of the United States.

42.     Despite notice from Plaintiffs of the issues described above and throughout this pleading, DEFENDANT UMG and/or DEFENDANT UMP continues to willfully infringe Plaintiff's copyrights in the works described herein by reproducing, displaying, distributing, and

1  creating derivative works of the works described herein without permission in violation of the

2  Copyright Act, 17 U.S.C. § 106.

3      43.    The infringement is willful, executed with full knowledge of Plaintiff's copyright,

4  and in conscious disregard of Plaintiff's exclusive rights in their protected works.

5      44.    By reason of the infringement, Plaintiff has sustained and will continue to sustain

6  substantial injury, loss, and damage to its ownership rights in the copyrighted works.

7  DEFENDANT UMG's and/or DEFENDANT UMP's false claim of ownership to the songs

8  prevented a very lucrative deal from accruing.  Plaintiff had a deal set with David Zowie to use the

9  Compassion album.  DEFENDANT UMG and/or DEFENDANT UMP demanded a prohibitively

10  high amount for Mr. Zowie to license the music.  Mr. Zowie ended up using a different source due

11  to the demand and Mr. Zowie's production has resulted in 140,000,000 views on one platform,

12  YouTube.  In contrast. DEFENDANT UMG and/or DEFENDANT UMP has asserted that the

13  Compassion album has resulted in royalty payments so small that they cannot be paid out or

14  processed.  DEFENDANT UMG's and/or DEFENDANT UMP's continued failure to monetize

15  Plaintiff's artistic works has resulted in many instances of high monetary damages, as this example

16  shows.

17      45.    Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an

18  injunction, in accordance with 17 U.S.C. § 502, restraining DEFENDANT UMG and/or

19  DEFENDANT UMP, its officers, directors, agents, employees, representatives, assigns, and all

20  persons acting in concert with DEFENDANT UMG and/or DEFENDANT UMP from engaging in

21  further acts of copyright infringement.

22      46.    Plaintiffs are further entitled to recover from DEFENDANT UMG and/or

23  DEFENDANT UMP the gains, profits, and advantages DEFENDANT UMG and/or DEFENDANT

24  UMP has obtained as a result of copyright infringement.

25      47.    At its election, Plaintiffs are entitled to recover statutory damages in accordance with

26  17 U.S.C. § 504.

27      48.    Plaintiffs are also entitled to recover costs and attorneys' fees in accordance with 17

28  U.S.C. § 505.

49.     Plaintiffs are informed and believe, and on that basis alleges, that unless enjoined by this Court, DEFENDANT UMG and/or DEFENDANT UMP will continue its course of conduct and will continue to wrongfully use, infringe upon, sell, and otherwise profit from Plaintiffs' copyrighted work.

///

///

///

///

### COUNT TWO

### DECLARATORY AND INJUNCTIVE RELIEF

### (As against all Defendants; and Does 1 through 100, inclusive)

50.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-46, inclusive, as if fully set forth herein.

51.     Plaintiffs possess a beneficial interest in the Original Composition and/or Original Sound Recording making Plaintiffs owner of all right, title and interest (including copyright) in the Copyrighted Works. DEFENDANT UMG and/or DEFENDANT UMP has claimed to own such rights independently of Plaintiffs.

52.     A judicial declaration is necessary to determine the rights and obligations of the parties.

53.     As a result, Plaintiffs seek declaratory judgment that (a) it has the exclusive rights conferred upon a copyright owner under the 1976 Copyright Act to the Original Composition and/or Original Sound Recording, including without limitation the exclusive right to manufacture, distribute, sell and exploit the Copyrighted Works and to grant derivative work licenses therefore including the license required for Defendants to exploit the Infringing Work, (b) none of these Defendants have any interest in and to the Original Composition and/or Original Sound Recording nor the right to exploit the Infringing Work without Plaintiffs' written approval, and (c) and that any further exploitation of the Infringing Work constitutes willful copyright infringement. Plaintiffs further seek injunctive relief requiring that Defendants disgorge to Plaintiffs all monies collected by

1    them within as purported copyright owners of the Infringing Work and other derivative work

2    containing Plaintiffs' Original Composition and/or Original Sound Recording.

3        54.      Plaintiffs are entitled to an injunction enjoining Defendants and their agents,

4    employees, and all other persons in active concert or privity or in participation with them, from

5    directly or indirectly infringing on Plaintiffs' copyright in the Composition and Musical Work or

6    from continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise,

7    reproduce, develop, or manufacture any works derived, copied, and/or sampled from the

8    Composition and Musical Work, in whatever medium, or to participate or assist in any such

9    activity.

10        55.      By reason of the foregoing acts of copyright infringement, Plaintiffs are entitled to

11    declaratory relief and a permanent injunction enjoining Defendants from continuing the aforesaid

12    acts of infringement pursuant to the Copyright Act, 17 U.S.C. § 502.

13    **COUNT THREE**

14    **CONSTRUCTIVE TRUST**

15    **(As against all Defendants; and Does 1 through 100, inclusive)**

16        56.      Plaintiffs reallege and incorporate by reference, as though fully set forth herein,

17    Paragraphs 1 through 52 of the Complaint.

18        57.      Plaintiffs are informed and believe and based thereon alleges that DEFENDANT

19    UMG and/or DEFENDANT UMP has made and retained illegal profits from their wrongful conduct

20    alleged above, all of which profits belong to Plaintiffs.

21        58.      Plaintiffs are presently unaware of where the Defendant may have deposited its illegal

22    profits. However, on information and belief, and based thereon Plaintiffs alleges that Defendant's

23    illegal profits, whether in the form of cash, bank accounts, inventory, equipment or other forms of

24    personal property, or in the form of real property, will eventually be traced through appropriate legal

25    process in connection with this action.

26        59.      By virtue of their wrongful conduct, Defendant holds the illegal profits as

27    constructive trustee for the benefit of Plaintiffs under California Civil Code § 2224.

28    **COUNT FOUR**

14
COMPLAINT

1

**ACCOUNTING**

2

**(As against all Defendants; and Does 1 through 100, inclusive)**

3      60.      Plaintiff realleges and incorporates by reference, as though fully set forth herein,

4   Paragraphs 1 through 56 of the Complaint.

5      61.      Plaintiffs are informed and believe that DEFENDANT MLC worked with

6   DEFENDANT UMG and/or DEFENDANT UMP in a direct or conspiracy manner, which resulted

7   in Plaintiff unlawfully being deprived of royalties.  Defendants are the only entities with access to

8   information to provide an accounting of the royalties paid out from DEFENDANT MLC to

9   DEFENDANT UMG and/or DEFENDANT UMP.

10     62.      DEFENDANT MLC has previously stated that they will not provide payment of

11  royalties until there is agreement amongst the parties or a court order instructs them to pay.  Despite

12  this statement DEFENDANT MLC continued to provide payments to DEFENDANT UMG and/or

13  DEFENDANT UMP. DEFENDANT MLC has stated they have corrected this behavior but has

14  refused to provide an accounting or any payment information.

15     63.      Plaintiffs are entitled to recover any profits of DEFENDANT UMG and/or

16  DEFENDANT UMP that are attributable to their wrongful conduct of infringements, under 17

17  U.S.C. § 504 and 15 U.S.C. § 1117.

18     64.      Plaintiffs are also entitled to actual or statutory damages sustained by virtue of

19  DEFENDANT UMG's and/or DEFENDANT UMP's wrongful conduct of infringements, under 17

20  U.S.C. § 504 and 15 U.S.C. § 1117.

21     65.      Plaintiffs are presently unaware of the amount of money due from Defendants to

22  Plaintiffs and the amount cannot be ascertained without an accounting of the number of

23  unauthorized reproductions, counterfeit and infringing products manufactured, caused to be

24  manufactured, imported, caused to be imported, marketed, distributed, offered for sale and/or sold

25  by the DEFENDANT UMG and/or DEFENDANT UMP.

26                                    **COUNT FIVE**

27                     **CONTRACT REVISION OR MODIFICATION**

28                  **(As against UMG and UMP; and Does 1 through 100, inclusive)**

66.        Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 62 of the Complaint.

67.        Plaintiffs are informed and believe that the contract agreements between Plaintiffs and DEFENDANT UMG and/or DEFENDANT UMP miscategorized in an improper manner to be works-for-hire by DEFENDANT UMG and/or DEFENDANT UMP for DEFENDANT UMG's and/or DEFENDANT UMP's benefit.  Plaintiffs therefore request the courts to either cancel the agreements between the parties or amend the agreements to what Plaintiff alleges is the correct form wherein the work-for-hire language is removed from the contracts.

68.        The contracts between the Parties are demonstrated with Exhibits 1, 2 and 3.  These agreements have the error that the contracts improperly classifies the works as "works for hire" when they do not meet the legal criteria for such classification under U.S. copyright law (17 U.S.C. § 101).  Plaintiff hereby requests the improper classification be corrected so the copyright protected works governed by Exhibit 1, 2, and 3 be correctly classified.  Additionally, it would be unfair or unjust to allow the contract to stand as is because it doesn't accurately reflect the legal relationship between the parties.  The current state of Exhibits 1, 2, and 3, wrongfully categorizes the works as "works for hire," results in unjust enrichment for the other party. Since the original classification was a mistake, it would be inequitable for the other party to retain rights they were not legally entitled to, and modification is necessary to restore fairness.

69.        Plaintiff respectfully submits that, in the alternative, the agreements between Plaintiff and DEFENDANT UMG and/or DEFENDANT UMP should be rescinded under the equitable principles of fairness and justice. Due to extraordinary circumstances—including DEFENDANT UMG's and/or DEFENDANT UMP's ongoing bad-faith conduct, misleading statements, and failure to perform obligations—the enforcement of the agreements as "work-for-hire" contracts would result in manifest injustice.

70.        Equity demands intervention to prevent DEFENDANT UMG and/or DEFENDANT UMP from benefiting unjustly from the improper classification of the works as "works-for-hire." DEFENDANT UMG and/or DEFENDANT UMP has neither contributed to the creation of the works in question nor monetized or fulfilled its contractual obligations regarding these works,

thereby violating its duties to Plaintiff. Moreover, DEFENDANT UMG's and/or DEFENDANT UMP's deliberate obfuscation of accounting practices and imposition of unreasonable royalty hurdles further perpetuate its inequitable conduct.

71.    Plaintiff asserts that equitable relief is not barred because DEFENDANT UMG's and/or DEFENDANT UMP's actions constitute an ongoing injustice. The principles of equity and good conscience warrant rescission of the agreements to restore fairness and prevent DEFENDANT UMG and/or DEFENDANT UMP from continuing to benefit from terms it is not legally entitled to enforce.

72.    Plaintiff therefore requests that the court exercise its equitable powers to rescind the agreements in question, or alternatively, to reform the agreements to reflect the correct classification of the works. Allowing these agreements to stand would perpetuate a fundamental inequity and cause ongoing harm to Plaintiff. Equitable relief is necessary to ensure justice is served and the rights of the parties are accurately reflected.

## COUNT SIX

### UNJUST ENRICHMENT

**(As against UMG and UMP; and Does 1 through 100, inclusive)**

73.    Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 69 of the Complaint.

74.    The Defendants received a benefit of improperly extending their ownership of the Copyrights governed by Exhibit 1, 2 and 3.  Additionally, the Defendants have received a benefit of improperly committing copyright infringement regarding the album artwork and 2 songs identified above.

75.    The Defendants have retained this benefit at Plaintiff's expense:  The defendant has kept and/or used the benefit in a way that is unfair or inequitable, at the expense of the plaintiff. Defendant has benefited from it without providing proper compensation when committing contract infringement.   Defendant has also benefited from the improper classification of the copyright protected works governed in Exhibit 1, 2, and 3 as "work-for-hires."

76.     It would be unjust to allow the Defendants to retain the benefit:  The retention of the benefit by the defendant is unjust under the circumstances. Defendant is not entitled to the benefit, has not paid for it, or it was obtained under unfair or wrongful circumstances.

## COUNT SEVEN

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (As against all Defendants; and Does 1 through 100, inclusive)

77.     Plaintiff realleges and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 73 of the Complaint.

78.     DEFENDANT UMG and/or DEFENDANT UMP, as a party to the agreements with Plaintiff, is subject to the implied covenant of good faith and fair dealing, which requires each party to act in a manner that does not frustrate the other party's rights to receive the benefits of the contract.

79.     DEFENDANT UMG and/or DEFENDANT UMP has acted in bad faith and engaged in conduct intended to frustrate Plaintiff's rights under the agreements. Such conduct includes, but is not limited to:

- Providing false and misleading statements regarding royalty payments owed to Plaintiff.

- Obfuscating and improperly concealing accounting records, thereby preventing Plaintiff from accessing transparent and accurate information about royalties owed.

- Establishing unreasonable hurdles for royalty payments, with no contractual basis, including the imposition of a $50.00 threshold that resets at the end of each royalty period, resulting in the systematic non-payment of royalties to Plaintiff.

- Failing to monetize or utilize the works governed by the agreements in any meaningful way, despite owing a duty to Plaintiff to act in good faith to advance Plaintiff's financial interests.

- Falsely asserting 100% ownership of the songs subject to the agreements, despite knowing that Plaintiff retained rights in both the publishing and royalties for the works. Defendant later admitted this assertion was incorrect but continued to act in ways that undermined Plaintiff's legitimate ownership claims.

- Providing multiple versions of the agreements to Plaintiff in censored form, with critical terms obscured or redacted, thereby preventing Plaintiff from obtaining clarity regarding the true nature of the contractual obligations and Defendant's financial accounting practices.

- Being persistently nonresponsive to Plaintiff's inquiries and requests for clarification, including failing to provide timely information, refusing to engage in meaningful correspondence, and creating unnecessary administrative barriers to the resolution of disputes.

80.    DEFENDANT UMG's and/or DEFENDANT UMP's bad-faith actions have deprived Plaintiff of the benefits of the agreements, including royalty payments and fair treatment in accordance with the terms of the agreements.

81.    As a direct and proximate result of Defendant UMG's and/or DEFENDANT UMP's breach of the covenant of good faith and fair dealing, Plaintiff has suffered substantial financial harm and has been denied the fair and equitable benefits of the agreements

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with Defendant from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Work, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendant's possession or control;

B. For a preliminary and permanent injunction enjoining and restraining Defendant and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyrights;

C. For actual damages, punitive damages, and Defendant's profits to be determined at trial, plus interest;

D.  For statutory damages of $150,000 per infringement pursuant to 17 U.S.C. § 504, at Plaintiff's election;

E.  That the Court order that Defendant's profits from their wrongful conduct be held in constructive trust for the benefit of Plaintiffs;

F.  That this Court order that an accounting be had to determine Defendant's profits and the damages due to Plaintiffs because of Defendant's infringing and unlawful activities;

G.  That this Court order disgorgement and/or restitution of Defendant's profits to Plaintiffs;

H.  That the Court order that Defendant pay their profits to Plaintiffs and the same be increased to the maximum extent provided by law, together with interest thereon at the maximum rate permitted by law;

I.  That the court order the Defendant to cover any and all cost to the Plaintiffs to reintroduce copyrighted works back into the published market worldwide.

J.  That the Court award Plaintiffs exemplary damages in an amount necessary to punish, deter and make an example of Defendant;

K.  For an award of reasonable attorney's fees and costs under 17 U.S.C. § 505;

L.  For compensatory damages to reverse the damage of the improper taken down of the *Compassion* album;

M.  For an award for treble damages under 17 U.S.C. § 504;

N.  That the court find the agreements between DEFENDANT UMG and/or DEFENDANT UMP and Plaintiffs as invalid and unenforceable for the inclusion of improper "work for hire" language or the court revise the agreements so the improper "work for hire" language is removed; and,

O.  For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands trial by jury on all claims so triable.

Dated: August 13, 2025                    Respectfully submitted,


John J. Kaiser
Katelyn N. Sauve
Attorney for Plaintiffs

COMPLAINT